If you're going to argue, please step forward and introduce yourselves. Appellant? Good morning, Your Honor. My name is Jane Notes. I am with the Illinois Attorney General's Office on behalf of the people of the state of Illinois. Good morning. And Dennis Booth, BOTH, on behalf of the defendants. Thank you. You may proceed. Good morning, and may it please the Court. This Court accepted two certified questions for interlocutory appeal pursuant to Rule 308. In the appellee's brief, the defendants seek to interject a third question into this appeal, specifically whether the people's complaint satisfies Illinois' fact pleading standards. The defendants lost on this issue in the trial court. They could have and did not seek a certified question on the issue. So accordingly, we request that the Court limit this appeal to the two certified questions that were accepted. Now, the first question asks whether, as the trial court held, the people must plead and prove a misrepresentation with intent that others rely to state a claim under the Consumer Fraud Act. The trial court reached this holding by relying on a single sentence from a 1992 decision of the Illinois Supreme Court, People v. E. and E. Hauling. This morning, I will explain why the trial court should not have followed that sentence. It is obviously inconsistent with the plain language of the statute. It was not necessary to the holding in the context in which it was made, and it was subsequently superseded by the Illinois Supreme Court's 2002 decision in Robinson v. Toyota Motor Corporation. I will start with the plain language of the statute. The E. and E. Hauling Court purported to be construing Section 2 of the Consumer Fraud Act. Ms. Nutzle, let's assume for argument's sake that one or more or all of us agree with you and the trial court that by inserting the dicta in E. and E. Hauling, the Supreme Court was wrong. You know, they just goofed it up, although they've repeated it many times since then, most recently in Robinson, where they say it again. In 2002, they say, yeah, you need reliance or intent that the person hearing it rely on it. So they've said it at least four times. And what are we to do with that? What could we do if we agreed with you? Well, the only time the court has said it in a case involving the Attorney General's office is the E. and E. Hauling case. So we would distinguish the other cases on the ground that they involved private parties. That said, I'd like to explain why the statement in E. and E. Hauling was dicta. But I guess my final answer would be is that if this Court agrees that it is bound by that statement in E. and E. Hauling, we would respectfully request that the Court make that clear in its opinion that that statement is inconsistent with the statutory language, and we would urge the Illinois Supreme Court, ask the Court to urge the Illinois Supreme Court to take the case because we do think this is a very important issue and the Illinois Supreme Court's statement in E. and E. Hauling was incorrect. But I would like to explain. But why is it an important issue, if I can ask you? They point out, the other side, point out on page three of their brief, reading just part of your complaint, using misrepresentations and other deceptive or unfair practices, Diamond and the other defendants have induced consumers to enter into risky and unaffordable loans and contracts. Other, also, Diamond also relied upon deceptive or unfair practice to persuade consumers, both of which indicates intentional that they wanted them to rely. Since you alleged that in your complaint, what's the problem with the complaint? Well, the problem is because the trial court reached a very broad ruling here. The trial court said that in all cases, the Attorney General has to plead a misrepresentation with intent that others rely. There are many claims, I mean, some claims like omission claims, concealment claims, intent is required under the statute, and we are more than happy to plead that. But other types of claims simply don't lend themselves to intent allegations. For example, the Consumer Fraud Act lists a number after Section 2, many, many per se violations. But how many of those per se violations are in front of us today? There were two pled here. There were Section 2B claims and 2Q claims pled, both were dismissed. And 2B goes to, a 2B violation is when a defendant fails to provide the requisite notice of cancellation. 2Q violations occur when a defendant fails to refund a consumer's money after the consumer has asked for a refund because home repair was not completed on time or correctly. So let me ask you, as far as your Section 2, your claim, that Section 2 kind of sets up two different classes, one where you need intent, one where you do not. Based on what? The grammatical reading of it? Exactly. I mean, the express language of the statute is that it prohibits a variety of misrepresentation, type claims, and then it says, or the concealment, suppression, or omission of any material fact with intent that others rely on the concealment, suppression, or omission of such material fact. It is expressed that the intent requirement applies only to concealment, suppression, or omission claims. And our view is that the General Assembly intended that for a reason. And that's because if you're going to hold people responsible for what they don't say, there's a real risk that you could sweep up a lot of inadvertent conduct. But it's quite different when you're talking about holding people responsible for what they do say. Counsel, that's your impression of what it says, correct? Based on what in the legislative history or what case supports that? We are relying solely on the plain language of the statute. And that's what the Court in E&E Hauling relied on. It was interpreting Section 2. It didn't have a case citation for this proposition, and it clearly misread Section 2 because Section 2 limits the intent requirement to concealment, suppression, or omission claims. And then it goes on to say that Section 2 is to be construed consistently with the Federal Trade Commission Act. Although those acts are different, are they not? One is in a mirror of the other. No, the language of the two acts are not the same, but it was clearly the General Assembly's intent that the type of conduct that one could be held responsible for under the Illinois Consumer Fraud Act would be the same as what you could be held responsible under the Federal law. Generally, but where the wording differs, the Illinois rule. Well, where the wording differs with respect, it's actually more favorable to the people because it expressly says that the intent requirement applies only in concealment, suppression, and omission claims. The Federal law does not limit the intent requirement to certain types of claims, and yet the Federal law has consistently been interpreted not to require a showing of intent. So what do we do with Siegel and Connick and all those cases that say you need intent? Well, those cases are all involved private parties, and our view to be, if we were asked, is that those cases don't reflect the statutory language, but the Court is not required to go there in this case because the only case that involves Attorney General claims that the Illinois Supreme Court has made this statement in is the E. and E. Hauling case. And I would like to walk the Court through E. and E. Hauling to explain why the Court is not required to go there in the context in which it was made. So first, at the outset of the opinion, this is at page 488, the Court in E. and E. Hauling correctly described the elements of a claim brought by the Attorney General or a State's attorney, and those elements come from Section 7 and Section 2. And the three elements are that the Attorney General could reasonably conclude that the action is in the public interest, that the defendants are engaged in a trade deal, that the defendants are engaged in an unfair or deceptive act or practice. The Court did not there at the outset of the opinion identify a requirement that the Attorney General plead a misrepresentation with intent that others rely. Now, the Court made the statement on which the trial court relied in the context of dealing with Section 2, but that wasn't the basis for the trial court I'm sorry, dealing with Count 2, but that wasn't the basis for the trial court's whole intent to deal with Section 2. It was a misrepresentation with intent that others rely. And then this, our understanding is confirmed by the way the Court in E. and E. Hauling dealt with Count 9. Count 9 was an omission claim, and the Court there said, consistent with the statutory language, that the Court was dismissing Count 9 for a failure to plead intent that others rely. It pointed out, however, that Count 9 was not a misrepresentation claim, the implication being that if it were a misrepresentation claim, the elements would be different, as the statute provides, and there would be no intent requirement. Now, the closest that the Court in E. and E. Hauling came to the holding that the Court in E. and E. Hauling did not identify as a holding, because, as I've explained, the E. and E. Hauling decision is internally inconsistent with regard to what constitutes an attorney general action under the Consumer Friars Act. The Court in E. and E. Hauling did not identify as an attorney general action under the Consumer Friars Act. This Court, regardless of which way it resolves the first question presented, is going to have to disregard some language in E. and E. Hauling, and the best route by far is to disregard that language that's inconsistent with the statute. And further confirmation comes from the Robinson case. In 2002, after E. and E. Hauling, the Court stated in Robinson that recovery may be had for unfair as well as deceptive conduct under the Consumer Friars Act, thereby making clear that the Act isn't limited only to misrepresentation claims, which the trial court here seemed to think. So to the extent there's precedential import to that one sentence in E. and E. Hauling, it has been superseded by the Robinson case. But the previous sentence, I mean the exact previous sentence, so the previous sentence to what you just read, recovery may be had for unfair as well as deceptive conduct under the Consumer Friars Act. And the court here, regardless of which way it resolves the  that language that's inconsistent with the statute. And further confirmation comes from the Court that recovery may be had for unfair as well as deceptive conduct under the Consumer Friars Act, thereby making clear that the Act isn't limited only to misrepresentation claims, which the practice offends public policy, whether it is oppressive, and whether it causes consumers substantial injury. So the Robinson court does go on to say we have two types of claims, deception and unfairness. But the trial court here thought that the people could proceed only on a to induce reliance. was that a Section 7, which refers to the Attorney General, or was it a 10A? That actually was a private party case. Well, I mean, we are interpreting here Section 2. And Section 2 applies to both private parties and the Attorney General. The dispositive distinction, and this goes actually to the second question presented here, which I will get to between 7 and 10A, is that 10A, the state requires private parties to show both actual damage and causation, whereas Section 7 does not require showing of damages or causation. It actually anticipates that the government will bring anticipatory claims whenever consumer harm is threatened. The government doesn't actually have to wait for consumers to be harmed. But I guess to your question with regard to the first question, I mean, we do believe that private parties should not have to show misrepresentations with intent to induce reliance. However, we also think that they are distinguishable from the Attorney General. How are they distinguishable under the Act, since you just said that Section 2 applies to private citizens as well? So private citizens could ask for relief under 2B and 2Q, just as the AG did in this case, right? But your argument, then, is that we shouldn't follow Stigall, Connick, Robinson and, I suppose, Cripe, because those cases all involve private citizens. What's the difference, then, since 2B and 2Q may be brought by citizens? Because, I mean, you know, the only time that the Illinois Supreme Court, you know, has made this statement, you have to show a misrepresentation with intent to induce reliance, clearly in conflict with the statutory language, in the context of an Attorney General claim, is the E&E Hauling case. And in that case, it was dicta for the reasons that I've explained. The decision is internally inconsistent about what elements the Attorney General needs to show. And so, therefore, this Court is going to have to disregard at least some of the language from that opinion. And I guess I would leave... No, we don't. We get to write it, right? So when we do that, couldn't we just cite Stigall, Connick, Robinson and Cripe, again, assuming Cripe, for the same quote that we have about the E&E Haulings? And they've said it four times, all of which are Section 2 cases. They said it, in my experience, when the Supreme Court says something multiple times, they kind of mean it. Again, you know, they really do. I'm not afraid of them, but I don't know how we get around them. You know, they've said it four times. Well, if the Court... I do believe that the private party cases are distinguishable. As I said, if the Court feels bound by the Illinois Supreme Court statements, we would respectfully urge that the Court make that very clear in the opinion, because we do believe the Illinois Supreme Court, if necessary, should revisit this issue. Because as I think the panel agrees, the clear language of the statute makes clear that Consumer Fraud Act claims are not limited to misrepresentation claims. And then when misrepresentation claims are pled, intent is not a necessary element of the claim. That is clear not only from Section 2 itself. It's clear from the federal cases upon which Section 2 was modeled. It's clear from the per se violations, which by their nature are not intent-based claims. And it's also clear from Section 7B, which describes the remedies that the Attorney General can seek when he or she brings a claim. And that section says that the Attorney General can seek enhanced penalties if he or she proves intent to defraud. The implication being that the Attorney General can seek ordinary penalties in cases where she doesn't prove anything about the intent. So I think... I guess going back to one question, perhaps Section B is an important distinction, 7B, between private party claims and Attorney General claims, because it does draw that distinction between claims where intent is pled and claims where intent is not pled. I would like to briefly talk about two arguments that appear in the defendant's brief. The first is that our approach would make every breach of contract a Consumer Fraud Act claim. That is incorrect. We recognize, consistent with this Court's holdings, that a breach of contract rises to the level of a Consumer Fraud Act violation only if the defendant's actions sufficiently implicate consumer protection concerns. And courts have given content to this requirement by looking for things like a pattern of misconduct or deception or some other aggravating factor. In this case, we clearly pled a pattern of misconduct. We pled that 50 complaints have been filed against these defendants with the Attorney General's office and that these defendants or one of these defendants, the primary defendant, has settled similar claims resulting in consent decrees twice in the past. So clearly, this is not an ordinary breach of contract claim. It involves the type of pattern of misconduct that sufficiently implicates consumer protection concerns. Okay. Thank you very much. I would like to preserve my argument just very quickly on the second question presented. The argument there is that the Attorney General does not need to plead damages or causation. The trial court clearly can use private party claims under Section 10A with Attorney General or State's Attorney's claims under Section 7. Thank you. May it please the Court. I'd like to begin by answering Justice Quinn's question. What are you to do? You are to follow what the Supreme Court has said. And what they said in E&E hauling is that the Supreme Court has said that the Supreme Court has said that the Supreme Court has said that the constitutional evidence is unequivocal and it isn't dicta, it's within the discussion of the sufficiency of the complaint alleged there. And the Court states these are the factors and includes with the intent. Now, when we look at what they've alleged in this case, in their own complaint, they say that they represented, being the defendants, that they would provide roofing when they didn't have a license. Well, that's the same thing as saying they omitted to tell these people they didn't have a license. So, if they use the word represent or misrepresent as opposed to omit, then they escape intent. Counsel said that the Robinson case sets up two types of cases. Deception and misrepresentation. And unfairness. But what they're arguing is the creation of a whole third concept of concealment being completely different than deception, and there is no distinction in those cases. All you have to do is look at all their different examples. Failed to inform the consumer. That's a suppression. Failed to inform the consumer again. Offered to arrange a risky and unaffordable loan. In other words, they concealed these facts. So they want you to believe that they can avoid using the word conceal or suppress, and then deception just disappears. If that's the case, from this day forward, there will never be an allegation that uses the word concealment, suppression, or omission. Everything will avoid intent. But this is the Consumer Fraud Act, and so there needs to be intent. These aren't negligent or inadvertent concealments or omissions or inadvertent misrepresentations. They are intentional. They are made so that you induce somebody to do what you're asking them to do. There is no difference in the use of these terms in the Act. Counsel, is there anything in legislative history that makes this distinction between what needs intent and what does not? I'm not aware of any, and I note that since it's not my burden here, it's not my appeal, that the state hasn't cited anything in the history that says that there is these different classes of cases. And I believe if it had been something, they would have cited that. There's been a lot of discussion back and forth about private causes of action, state causes of action. But we all agree there's only one case dealing with this issue that deals with the Attorney General, and that is the E&E hauling case. So I'm a little bit confused by picking and choosing, rely on private cause of action cases here, but disregard them over here. Either this is a private cause of action, or it is a state action, or it isn't, I don't think you get to pick and choose what you like from the various cases. The bottom line here is, in order for it to be fraud, there needs to be some form of intent. Otherwise, we're simply arguing semantics. These words are interchangeable, they are synonymous with one another, and in this case, the judge was ruling on the sufficiency of their allegations, not all allegations to come in the future. And he said, based on what you are alleging in this complaint, you need to have the element of intent. And they don't have that here. How would you be able to show intent? Let's say you go on the other side for a change, Mr. Booth, now you're an AG, and you're going to write one of these complaints, you're representing a private citizen, one of these elderly people that your clients allegedly have scammed. How would you go about pleading intent on a 2B complaint that the scammer, the fraudulent home repair people had failed to provide notice of a classification? That's the notice. They're required to give such a notice, they failed to do so, how do you allege intent? Well, let me first note that the receiver, who did not receive it, relied on that. Let me note that the question that's certified doesn't deal with a 2B failure to give notice question. That's not what was presented. But that is the nature of the complaint in front of the trial court, is that right? Well, it was one of the numerous allegations, but I'm just noting that that's not what was certified, whether we're not really here on the question of failure to give the notice requires intent. But I would think it's true. And you're a lawyer, you're a smart guy, how do you allege that? You write a complaint, I don't need 50 counts, but how do you phrase it in terms of using intended to rely? How do you write a complaint that says that the home repair people intended for the person who did not receive the necessary document, intended them to rely upon the document that the fraudulent person did not give them? Well, it wouldn't be intended to rely on what they didn't give. It would be that failure to provide it was intended to avoid the consequences of what would have happened had they provided. That's sort of like the... Well, again, so it can't be proved. Would that be right? You wouldn't have the plea, you wouldn't plead it, because it's impossible to plead it, is it not? It's impossible to plead that they intended to rely on that failure? That the purpose of the person who failed to give the notice intended that the person who did not receive a notice would rely on that. Well, I think that that's a better way to phrase it, would be to allege that you didn't provide it because you intended that that person did not receive a notice. You intended that that person not know what their rights were, and thereby would be going along with whatever your proposal was. But wouldn't that fail the E.E. Hulling and the Siegel, Connick, Robinson test? Because that's not what those cases say. They say what you say they say. Unfortunately, I'm lost on the question. Okay, well, somebody, how would you plead the failure to refund money was an intent? How do you prove intent to rely on behalf that the, again, the home repair fraud people intended that the victims rely upon their failure to return money? How do you prove that? How do you allege it? Why would you allege it? Why would I allege it? Why would the plaintiff select such a thing? Well, I can't answer why the AG would do or not do whatever they do. But in terms of the failure to give back money, again, that's not part of the question. I gave you examples of the types of allegations where the court has ruled that the intent was required. He didn't say that intent was required on a failure to refund. But he dismissed those anyway. What was the basis then to dismiss those two counts under 2B and 2Q if not their failure to prove up intent to rely? Or do we have that in front of us? Well, as I'm pausing to think, as I'm reading the question, as I address the question, I don't believe that is the question as to whether or not you need it for the B and Q, whereas the state discriminator per se acts. But if we look at the other allegations regarding supposed deceptions, misrepresentations, or concealments, that's where I believe the judge was saying the intent comes in. And that's what the question before you is, do those types of allegations, examples of which I just read, require intent? I say that the only case on the subject says yes, intent is required. Otherwise, despite the trust me argument, the state can make every breach of contract into an allegation before. It's not the kind of intent we're talking about, right? So the question we have, as I understand it, it's on issue two on all these cases we're arguing about. The defendant's intent is that the plaintiff rely on the deception. And the judge held that you must have that no matter what the allegation is. In their complaint, which again, just various short portions that you put at page three of your brief, the AG referred to the actions of your clients induced consumers to enter, persuaded consumers to use. That indicates reliance, doesn't it? It does. Okay, I think it does, too. Counsel, let me ask you a question. The Attorney General's office said that the holding in E.E. Hawling is DICTA. What do we do with the other cases? Do we ignore them, Connick, Siegel, Robinson? I don't know how you could. I see a consistency, so I don't know how you could say this is DICTA and ignore the subsequent cases, although, again, they're not Attorney General cases. And so, again, I just can't understand how the Supreme Court is discussing what is sufficient for allegations of a consumer fraud complaint brought by the State of Illinois, and it says intent is required. And in that case, there wasn't any, so it was insufficient. How that can be DICTA? It seems to me it is the heart of their discussion on the sufficiency of that particular complaint. What about the proximate cause argument? Well, again, they talk about the unfairness and they talk about Robinson. And Robinson, in the unfairness cases, talks about a substantial injury. In our case, although they argue about threatened actions, they don't allege threatened actions. They allege actions that have already taken place. So this isn't we're coming in and suing to prevent a harm. We're coming in instead to remedy a harm that they claim would be caused already. Therefore, if there has been harm, you need to say that that harm was caused by these actions. You're not saying there's no place in this allegation, anywhere in the complaint, that says we're intervening beforehand. This is a threatened harm. They're saying these acts have already taken place and, therefore, we need to redress the injuries. And there has to be, then, an injury. Let me ask this, counsel. Where does the proximate cause language appear in the statute? Is it in Section 7 or Section 10? Well, I don't think that there's actual language that says proximate cause. But how can you have a remedy if you don't have any injury? Nothing has happened wrong. Everybody got exactly what they wanted. But we're still entitled to penalties and damages? Just by common sense, there must have been a harm in order for them to remedy it. If there is no harm, there's nothing for them to remedy. And as I said, this is not a case about what may happen in the future. They're alleging in this case, and again, that's what we're here to talk about, not the broad picture about every other case they may want to bring in the future. We're here to discuss what they've alleged here, and they haven't alleged that my clients have caused any harm by their actions. Thank you. Ms. Knotts, five minutes. And the first question, I would just like to return to the plain language of Section 2. It declares unlawful deception, fraud, false pretest, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely on the concealment, suppression, or omission of such fact. Justice Connors, you asked what the legislative history shows. I would submit legislative history is not necessary when the language is so clear. Expressly, the intent requirement applies only to concealment, suppression, and omission claims. Justice Quinn, there were a number of questions about the per se violations that were pled here. These were strict liability violations, and they were dismissed by the trial court because the trial court believed that the attorney general needs to plead and prove a misrepresentation with intent that others rely. And on that basis, he dismissed strict liability violations. There simply is no way to understand that ruling that's consistent with the statutory language. Now, opposing counsel suggested that the attorney general, going forward under our theory, is going to, I guess, essentially no longer have to plead intent when pleading concealment, suppression, or omission claims. That's clearly incorrect. There is a difference between a misrepresentation, which requires a false statement, and a concealment, suppression, or omission claim, which is premised on silence. The attorney general is not going to be able to plead that silence constitutes a false statement. Finally, I guess not quite finally, but opposing counsel suggested that all Consumer Fraud Act claims have an intent requirement. That is confusing common law fraud claims with Consumer Fraud Act claims. When the General Assembly enacted the Consumer Fraud Act, it modified some of the elements that were required under the common law. And among those elements were the requirement of a misrepresentation with intent to deceive. The General Assembly made a decision that more lenient proof requirements were necessary to better protect the public and ensure a fair marketplace. And so therefore, in Section 2, it is not limited to misrepresentation claims expressly, and it requires intent only for concealment, suppression, or omission claims. It says it's to be construed consistently with the Federal law, which does not require a misrepresentation with intent to deceive. It provides for per se violations, which are strict liability. And it includes Section 7B, which I think, having given it some thought, is the best way to distinguish attorney general claims from private party claims. Because Section 7B expressly states that the attorney general gets enhanced penalties if the attorney general can prove the defendant is guilty. And it states that the attorney general can prove the defendant acted with intent to defraud, the clear implication being that in the ordinary case, the attorney general can still proceed without a showing of intent. And then I would simply reiterate that if this Court feels that it is bound by yinny-hauling or decisions involving private parties, we respectfully request that the Court make clear that those cases are inconsistent with the statutory language and ask the Illinois Supreme Court to resolve this very serious problem. Turning to the second question presented, the trial court held that the people must plead and prove damages and causation. It cited no authority for this proposition, and there is none. The trial court clearly confused private party actions with attorney general actions. Because attorney general actions, it was anticipated by the General Assembly that the attorney general could take preemptive action to stop threatened harm. And that's exactly part of our pleading here. We are seeking an injunction. We're seeking to stop these defendants from engaging in the type of misconduct that they have engaged in. And my opposing counsel is simply incorrect with regard to the consumers at issue when he says that these people got exactly what they wanted. Our complaint includes allegations that these people did not get what they wanted. They got home repairs that were incomplete, that were shoddy, that were unfinished. And they got financing that was much more adverse than they ever realized that they were going to get. Ms. Knotts, will you please conclude? I will. So we respectfully request that the Court answer the two certified questions as the people suggest and reverse the trial court. Thank you very much.